UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JESSE A. SCHULZ,

              Plaintiff,

        v.                                     Case No. 22-C-407

SGT. ADELMANN, SGT. STARY,
SGT. CAMPBELL, SGT. GREENWOOD,
SGT. SMITH, SGT. VALUCAS,
SGT. REETZ, LT. MASSMANN, and
MANITOWOC COUNTY JAIL,

              Defendants.

## SCREENING ORDER

      Plaintiff Jesse Schulz, who is currently serving a state prison sentence at the Oshkosh Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated while he was on a probation hold at the Manitowoc County Jail. This matter comes before the Court on Schulz's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

      Schulz has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Schulz has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial

partial filing fee of $21.12. Schulz's motion for leave to proceed without prepaying the filing fee will be granted.

SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content

2

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

Schulz was booked into the Manitowoc County Jail on a probation hold on January 19, 2022. He explains that prior to his arrest, he had been receiving infusions of IV antibiotics for a recent staph and osteomyelitis infection in his spine and ankle. Schulz allegedly told Sgt. Adelmann that he needed one final infusion. About five days later, on January 24, the pain in Schulz's back and ankle allegedly returned. Schulz saw a nurse and informed her of his recent hospitalization and follow-up antibiotic infusions. According to Schulz, she checked his vitals and told him he was fine. Dkt. No. 1 at 3-4.

On January 28, 2022, after allegedly informing staff multiple times that he needed medical help at Aurora Hospital, Schulz informed Sgt. Stary that he was going to hurt himself so that he would be taken to the hospital. Schulz explains that he began to punch the wall but followed Sgt. Stary's orders to stop. Schulz explains that he walked around the day room and twice pushed the intercom button. He was removed from the day room, handcuffed, and placed in a receiving cell. Dkt. No. 1 at 4-5.

The next day, Schulz learned that he had been placed on thirty-minute medical observation. He asked to talk to a nurse who told him she had contacted Aurora's infectious disease doctor and Bay Care (Schulz does not explain what this is) and was informed that Schulz was done with the antibiotics. The nurse allegedly checked Schulz's vitals but ignored Schulz's complaints that his back pain was progressing. Schulz pressed his intercom button and asked why he was being punished for asking for help. Sgt. Valucas allegedly spoke to Schulz and tried to comfort him.

3

According to Schulz, after Sgt. Valucas left, he disabled his intercom, threw his stuff on the ground, and started kicking the door. Sgt. Valucas asked Schulz to stop and to clean up his mess. Schulz was then moved to medical segregation. Dkt. No. 1 at 5.

On January 30, 2022, Schulz allegedly informed Sgt. Stary that he had harmed himself and needed to go to the hospital. Schulz explains that he was placed in a suicide smock and taken to the emergency room at Holy Family Hospital. The doctor ordered blood work and allegedly sent Schulz to St. Mary's Hospital in Green Bay. He tested positive for COVID and was returned to the jail. Schulz explains he was kept on suicide watch for several days even though he was not suicidal but only wanted medical care. He explains that the lights were constantly on in his cell, and he had to yell through the door to Sgt. Stary, Sgt. Campbell, and Sgt. Greenwood to explain what he did and why he had done it. Schulz asserts that it was embarrassing and degrading. Dkt. No. 1 at 5-6.

According to Schulz, on February 2, 2022, he asked to see a nurse because he was experiencing chest pains and shortness of breath, at which time he was taken off suicide watch and quarantined for COVID. Schulz asserts that Sgt. Valucas grabbed his clothes, let him take a shower, and then put him back in a receiving cell, where the lights were constantly on. Schulz was not allowed any other property. The nurse allegedly checked on Schulz the following day and ordered an expectorant and Tylenol. Schulz states that he did not bother to bring up his worsening back pain because they kept telling him there was no way to know if he had an infection and he did not like being treated like a liar. Later that day, Schulz allegedly informed Sgt. Adelmann that he had "taken half of a soft plastic spoon [and] hidden it on his body." Schulz explains that he was again taken to the Holy Family emergency room and then almost immediately returned to the jail. Schulz asserts that he was placed on suicide watch for five days. He states that during this

4

time the lights were constantly on, he had nothing to read or write with, he was not allowed to take a shower, and he received only bagged lunches with no fruits, vegetables, or juice. Dkt. No. 1 at 6-7.

On February 7, 2022, Schulz received two days in segregation as punishment for two minors (reduced from a major). He asserts that he remained in the same receiving cell he had been staying in. When his punishment was over on February 9, 2020, he was informed that he would remain in the receiving cell for another week on administrative confinement. He was allegedly informed this was not considered punishment because he was allowed to have his legal paperwork. Schulz asserts that he "immediately flood[ed his] cell in protest." He was placed in a cell without socks, a blanket, or mattress for about four hours, then moved to another cell where he was given a blanket. According to Schulz, Sgt. Reetz and CO Hablewitz told him he was not allowed to brush his teeth. Schulz asserts that he began to experience horrible anxiety and was unable to make simple decisions. Dkt. No. 1 at 8.

Schulz explains that "[t]his ordeal finally ended February 18th after 21 days in a lit room, 16 days with inadequate nutrition, and having suicide watch, and administrative confinement used punitively." According to Schulz, on February 22, 2022, he was transferred to Dodge Correctional Institution. Dkt. No. 1 at 8.

### THE COURT'S ANALYSIS

Schulz sues jail staff and seeks relief based on the allegedly "inhumane conditions" of his confinement. He does not sue medical staff and does not seek relief in connection with the medical care he received. Dkt. No. 1 at 9. According to Schulz, he was detained at the jail while awaiting formal revocation of his extended supervision. Because his custody was predicated upon his prior conviction, the Eighth Amendment applies. To state an Eighth Amendment claim based on

5

inadequate jail conditions, a plaintiff must allege that "(1) the conditions in the prison were objectively 'sufficiently serious so that a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities,' and (2) prison officials have acted with deliberate indifference to those conditions." *Vasquez v. Frank*, 290 F. App'x 927, 929 (7th Cir. 2008) (citations omitted).

Schulz fails to state a claim because the Court cannot reasonably infer that the conditions of his confinement were objectively substandard. The Seventh Circuit has explained that "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). After all, "restrictive and even harsh" conditions are "part of the penalty that criminal offenders pay for their offenses." *Rhodes v. Chapman*, 452 U.S. 520, 561 (1979). Further, "it is not just the severity of the [condition], but the duration of the condition, which determines whether the conditions of confinement are unconstitutional." *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997).

Twenty-four-hour lighting does not necessarily constitute an extreme deprivation, particularly when the duration is for the relatively limited period of a few weeks. *See Vasquez*, 209 F. App'x at 929 ("24–hour lighting involving a single, 9–watt fluorescent bulb does not objectively constitute an 'extreme deprivation'"). Indeed, the failure to maintain constant lighting for inmates who may be suicidal can be the basis of a claim against the jail. *See Taylor v. Wausau Underwriters Ins. Co.*, 423 F. Supp. 2d 882 (E.D. Wis. 2006). Further, although Schulz alleges that he did not receive a fruit or vegetable for two weeks, he fails to describe what food he did receive, so the Court cannot reasonably infer that the food he was given was nutritionally inadequate as he characterizes. *Twombly*, 550 U.S. at 570. ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

6

defendant is liable for the misconduct alleged."). Nor can the Court reasonably infer that the individual defendants knew what food Schulz was given or had any authority to change the menu. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) (noting that individuals cannot "be held liable unless they had some personal involvement in the alleged constitutional deprivation").

And, even if Schulz had sufficiently alleged that the jail conditions were constitutionally inadequate, nothing in his complaint suggests that Defendants were deliberately indifferent to those conditions. Schulz explains that officers tried to talk him through his frustrations, made efforts to protect him from himself when he acted out by self-harming in order to get his way, and removed property from him only after he damaged or destroyed it (*e.g.*, by disabling the intercom and flooding his cell). Thus, Defendants' actions had valid penological purposes of keeping him safe and limiting his opportunity to act out. In short, nothing suggests that officers "acted with anything but good faith, much less the 'criminal recklessness' necessary for an Eighth Amendment claim." *Vasquez*, 290 F. App'x at 930.

The Seventh Circuit has emphasized that the norm is to afford a plaintiff at least one opportunity to amend his complaint. *See Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). Accordingly, if Schulz so chooses, he may file an amended complaint by **June 6, 2022**. He is advised that an amended complaint replaces the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). If an amended complaint is received, the Court will screen it as required by 28 U.S.C. §1915A. If an amended complaint is not received, the Court will dismiss this action based on Schulz's failure to state a claim in his original complaint. The Court will enclose an amended complaint form along with this decision. Schulz must use the form. If he needs more space, he may attach up to five additional pages.

7

**IT IS THEREFORE ORDERED** that Schulz's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that on or before **June 6, 2022**, Schulz may file an amended complaint. If the Court does not receive an amended complaint by the deadline, the Court will dismiss this action based on the complaint's failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk's Office mail Schulz a blank prisoner amended complaint form and a copy of the guide entitled "Answers to Prisoner Litigants' Common Questions" along with this order.

**IT IS FURTHER ORDERED** that the agency having custody of Schulz shall collect from his institution trust account the $328.88 balance of the filing fee by collecting monthly payments from Schulz's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Schulz is transferred to another institution, the transferring institution shall forward a copy of this Order along with Schulz's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Schulz is located.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution,

8

and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must

submit the original document for each filing to the Court to the following address:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will

only delay the processing of the matter.

Schulz is further advised that failure to make a timely submission may result in the

dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of

Court of any change of address. Failure to do so could result in orders or other information not

being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin this __9th__ day of May, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

9